IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA H.,

    *Plaintiff,*

vs.

Case No. 22-CV-1266-EFM

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Amanda H. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act"). She contends the decision of the administrative law judge ("ALJ")—particularly his conclusion as to Plaintiff's residual functional capacity ("RFC")—was not supported by substantial evidence. Specifically, she argues the RFC was based on a misunderstanding of her severe impairments and that the ALJ improperly discounted the opinions of her treating physicians. The Court disagrees. Because substantial evidence supports the decision of the Commissioner, that decision is affirmed.

### I.     Factual and Procedural Background

Plaintiff applied for disability insurance benefits on September 4, 2020, alleging an onset date of March 11, 2020. Her application was initially denied on March 22, 2021. She requested reconsideration, and her application was again denied on July 20, 2021. Plaintiff then requested a hearing before an ALJ. The hearing, which Plaintiff attended, was held on December 23, 2021.

Plaintiff testified in support of her application at the hearing. She testified that she stopped working because she experienced dizziness and frequent blackouts at work. Plaintiff stated that she would pass out each time she stood up, which amounted to multiple times each day. For instance, even showering was difficult for Plaintiff because it required her to stand up and face the prospect of dizziness and blackouts. Plaintiff reported that these symptoms affected her approximately a dozen times per day and attributed them to her diagnosed postural orthostatic tachycardia syndrome ("POTS"). The symptoms were most often triggered by changes in position (i.e., from sitting to standing or vice versa) and heat. Plaintiff also testified about her adrenal insufficiency, which she believed caused her fatigue and difficulty sleeping. The medications prescribed to treat her adrenal insufficiency reportedly raised her heart rate, which in turn worsened her POTS symptoms. Plaintiff described the situation as a delicate "balancing act."

Two state agency medical consultants, Drs. Karen Sarpolis and David Braverman, rendered opinions as to Plaintiff's physical limitations. Dr. Sarpolis found the claimant could lift 10 pounds occasionally and 10 pounds frequently. She could stand or walk for 4 hours out of an 8-hour workday with normal breaks, as well as sit for up to 6 hours out of an 8-hour workday with normal breaks. Dr. Sarpolis concluded Plaintiff could push and pull the same weights, is limited to occasional postural activities, and must avoid concentrated exposure to heights, moving machinery and driving. Dr. Braverman's opinion was similar but not identical. He concluded that

Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. She could stand or walk for 4 hours out of an 8-hour workday with normal breaks, as well as sit for up to 6 hours out of an 8-hour workday with normal breaks and push and pull the same weights. Dr. Braverman felt that Plaintiff would be limited to frequent climbing ramps and stairs, stooping, kneeling, crouching, crawling, and occasionally climbing ladders, ropes or scaffolds. Finally, he concluded Plaintiff must avoid concentrated exposure to extreme heat and hazards, such as heights, moving machinery and driving.

Several of Plaintiff's treating physicians also rendered opinions as to her limitations. Dr. Cierra Johnson opined that Plaintiff could sit for 6 hours or more, could stand or walk for less than 2 hours in an 8-hour workday, could sit for 15 minutes at a time which should then be followed by a five-minute walk, and could stand for less than one minute at a time. Dr. Johnson further opined that Plaintiff would need several unscheduled breaks per hour, each break lasting around 20 to 30 minutes. Plaintiff could rarely lift things weighing less than 10 pounds and could never lift anything 10 pounds or more. Dr. Johnson predicted that Plaintiff would be off-task 25% or more of a typical workday and would be absent from work four or more days per month.

Dr. Larry Midyett rendered a similar opinion that diverged on a few points. He opined that Plaintiff had no sitting limitation in an 8-hour workday but could only sit, stand, or walk for less than 2 hours. She could sit for 60 minutes at a time and could stand for 15 to 20 minutes at a time. Dr. Midyett stated that Plaintiff could rarely lift 10 pounds and should never lift more than 20 pounds. Plaintiff would be off-task 25% or more of a typical workday but would never be absent on account of her symptoms. Dr. Midyett also opined that Plaintiff "cannot work" and that her current symptoms "make it impossible for her to maintain gainful employment."

Dr. Steven Seals, having only seen Plaintiff twice, opined that she could sit for about 4 hours and stand or walk for less than 2 hours during an 8-hour workday. Plaintiff could sit for up to 30 minutes and stand for up to 10 minutes at a time. Dr. Seals opined that Plaintiff would need to take unscheduled breaks of up to 15 minutes every hour. She could occasionally lift up to 10 pounds but never lift for more than 20. And Plaintiff would likely be off-task 20% of a typical workday and might be absent up to four days per month. Dr. Seals indicated that Plaintiff was capable of low stress work.

After the oral hearing and based on the evidence in the record, the ALJ issued a written decision denying Plaintiff's application for disability insurance benefits. He found at step one of the Commission's sequential evaluation process that Plaintiff had not engaged in substantial gainful activity since March 11, 2020, the alleged onset date. At step two, the ALJ concluded that Plaintiff had the severe impairments of adrenal insufficiency and POTS.[1] But at step 3, the ALJ found that neither of these impairments or combination of impairments met or medically equaled a listing from the regulations.

The ALJ then determined Plaintiff's RFC, finding that she had the RFC to perform sedentary work. Specifically, the ALJ found that Plaintiff could:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 2 hours per 8-hour workday. The claimant can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead. The claimant must

---

[1] The ALJ found that Plaintiff had other severe impairments, but Plaintiff has not raised those as grounds for remand in this appeal.

> avoid extreme heat and hazards such as unprotected heights, moving mechanical parts, and operation of a motor vehicle in a workplace setting.

In formulating the RFC, the ALJ considered Plaintiff's impairments and reported symptoms. He concluded that her statements as to the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence in the record. With respect to her adrenal insufficiency, the ALJ noted numerous examples in the record where Plaintiff's symptoms had improved with medication. And the ALJ noted that Plaintiff's reported activities of daily living after her alleged onset date—for example, leading a "busy lifestyle" and walking two miles routinely—were inconsistent with her reports as to the intensity, persistence, and limiting effects of her symptoms.

In considering Plaintiff's POTS symptoms, the ALJ noted that several positive examination results did not support Plaintiff's complaints of an accelerated heart rate. And the evidence showed that Plaintiff's symptoms improved after seeing a cardiologist who prescribed a beta blocker. Future examinations showed regular heartbeat. The ALJ noted that Plaintiff experienced challenges with tachycardia and medication adjustments in December 2020, but also noted that the record reflected improvements with steroid adjustments by March 2021. The ALJ cited a visit during which Plaintiff was able to quickly rise from a seated position and climb up on to the examination table without assistance and was able to get her hands and palms to the floor with her knees straight, without any mention of an accelerated heart rate. And the ALJ noted Plaintiff's reports to her cardiologist that he had feelings of lightheadedness upon standing, but those symptoms were typically resolved with tensing maneuvers. Frank syncopal spells (i.e., fainting episodes) only occurred every six months or so.

The ALJ considered the persuasiveness of prior administrative findings in formulating Plaintiff's RFC. He found the opinions of Dr. Sarpolis and Dr. Braverman somewhat persuasive because they were well supported by a detailed review of the evidence. For instance, both relied on medical evidence that showed Plaintiff's adrenal fatigue had improved on adjusted medications and that her POTS had improved with the initiation of a beta blocker. The ALJ found that the opinions of both doctors were consistent with Plaintiff's treatment records, which showed that while the efficacy of treatment had varied from time to time, Plaintiff's physical examinations had not demonstrated significant physical limitations. The ALJ also found the opinions consistent with Plaintiff's reported activities of daily living, such as driving, spending up to two hours online, and socializing in person.

The ALJ largely found the opinions of Plaintiff's physicians unpersuasive. As to Dr. Johnson's opinions on Plaintiff's physical limitations, the ALJ found it not entirely persuasive because it appeared to rely significantly on Plaintiff's own reports of fatigue and syncope that were not consistent with her physical examinations or even Plaintiff's own reports to providers. The ALJ found the opinion of Dr. Midyett completely unpersuasive, noting first that his opinion that Plaintiff "cannot work" must be ignored because that is an issue reserved to the Commissioner by regulation.[2] Additionally, the ALJ noted that Dr. Midyett's opinion was supported only by a "cursory explanation" that was inconsistent with even his own examination notes—for instance, that Plaintiff's symptoms had improved with hydrocortisone and that she reported a "busy lifestyle." The ALJ also found Dr. Midyett's opinion inconsistent with Plaintiff's other treatment

---

[2] *See* 20 CFR § 404.1520b(c)

records. Finally, Dr. Seal's opinion was found to be not entirely persuasive because it was inconsistent with Plaintiff's other treatment records and Dr. Seal's own treatment notes.

At step four of the sequential evaluation process, the ALJ concluded, based on the testimony of a vocational expert, that Plaintiff was unable to perform any past relevant work. But at step 5, based on Plaintiff's age, education, work experience, and RFC, the vocational expert testified that Plaintiff could perform the work of an order clerk, telephone clerk, or an assembler, jobs for each of which exist in significant numbers in the national economy. The ALJ therefore found that Plaintiff was not disabled under the Act.

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on August 9, 2022. The ALJ's decision is thus the final decision of the Commissioner in Plaintiff's case. Plaintiff filed this action seeking judicial review of the Commissioner's final decision on October 5, 2022.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[3] The Court must therefore determine whether the Commissioner made factual findings that are supported by substantial evidence in the record and applied the correct legal standard to those factual findings.[4] "Substantial evidence . . . is 'more than a mere scintilla.' "[5] "It means—and means only—'such relevant evidence as a reasonable

---

[3] 42 U.S.C. § 405(g).

[4] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

[5] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

mind might accept as adequate to support a conclusion.' "[6] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[7]  However, courts "also do not accept 'the findings of the Commissioner' mechanically or affirm those findings 'by isolating facts and labeling them as substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.' "[8]  "Evidence is not substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion."[9]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[10] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[11]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[12] The steps are

---

[6] *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229).

[7] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[8] *K.I. v. Kijakazi*, 2021 WL 4149087, at *1 (D. Kan. 2021) (alteration in original) (quoting *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012)).

[9] *Id.* (quoting *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005)).

[10] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citations omitted).

[11] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920).

[12] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); see 20 C.F.R. § 404.1520(a)(4).

designed to be followed in order.[13]  If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[14]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals one of a designated list of impairments.[15]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[16]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[17]  The claimant bears the burden in steps one through four to prove an impairment or combination of impairments that prevents the performance of past relevant work.[18]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[19]

---

[13] *Barkley*, 2010 WL 3001753, at *2.

[14] *Id.*; *Lax*, 489 F.3d at 1084 (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)).

[15] *Lax*, 489 F.3d at 1084 (citations omitted).

[16] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[17] *Id.* (citing *Williams*, 844 F.2d at 751).

[18] *Lax*, 489 F.3d at 1084 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)).

[19] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

### III.  Analysis

Plaintiff challenges the ALJ's decision on the ground that the RFC was not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly discounted her symptoms based on a misunderstanding of her conditions, and the ALJ's consideration of her physician's medical opinions was similarly flawed. The Court addresses each in turn.

**A.   Plaintiff's Reported Symptoms**

The RFC must address the claimant's reported symptoms.[20] Symptoms are the claimant's own description of her physical or mental impairments.[21] But the ALJ does not take the claimant's reports as to her symptoms at face value.[22] Rather, the ALJ will consider whether the claimant's "statements about the intensity, persistence, and limiting effects of [] her symptoms are consistent with the medical signs and laboratory findings."[23]

In her hearing testimony, Plaintiff reported that her severe symptoms kept her from working. She identified her symptoms as frequent dizziness and blackouts, as well as fatigue. The ALJ found that Plaintiff's reported symptoms were not totally consistent with both the medical evidence and Plaintiff's own statements as to her activities of daily living.

The ALJ recognized that Plaintiff's fatigue and adrenal insufficiency were not under optimal control. Plaintiff would experience success on medications, at one time noting that she

---

[20] 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

[21] Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *2 (S.S.A. 2017).

[22] *See* 20 C.F.R. § 404.1529(a)-(b); *see also Timothy Jon H. v. Kijakazi*, 2022 WL 3644236, at *2 (D. Utah 2022).

[23] SSR 16-3p, 2017 WL 5180304, at *5.

was "feeling well" even with a decrease in dosage. Other times, however, Plaintiff complained of a worsening of her fatigue. While Plaintiff faults the ALJ for relying too heavily on the periodic improvements in her symptoms, the ALJ properly considered the effectiveness of Plaintiff's treatment regimen.[24] While it was not a complete success in that it rendered her symptom-free, neither did the ALJ suggest Plaintiff was ever symptom-free. And the Commissioner is correct in noting that "symptom-free" is not the applicable standard.

As to Plaintiff's POTS, the ALJ noted that Plaintiff had experienced lightheadedness, dizziness, and syncope as a result of her condition. But again, the ALJ noted periods of improvement in Plaintiff's symptoms following the prescription of new medications. Plaintiff's symptoms showed improvement when she was prescribed a beta blocker by a cardiologist. And during a visit in June 2020, Plaintiff denied any irregular heartbeat, dizziness, or headaches, and her physical examination her heart showed a regular rhythm. Further, during a physical examination in April 2021, the ALJ noted that Plaintiff was able to get her hands and palms to the floor with her knees straight and was able to quickly climb up from a seated position on to the examination table without assistance. None of these maneuvers were accompanied by the disabling symptoms—lightheadedness, dizziness, and syncope—Plaintiff claimed normally accompany such changes in position. Plaintiff complains that the reason for that visit was joint pain, not her POTS symptoms, but the ALJ could still reasonably consider it as inconsistent with Plaintiff's statements about her symptoms, as these maneuvers are exactly the types of things Plaintiff, in her hearing testimony, claimed caused her extreme difficulty.

---

[24] 20 C.F.R. 404.1529(c)(3)(iv)-(v) (an ALJ must consider the effectiveness of treatment)

In considering the totality of Plaintiff's reported symptoms, the ALJ relied in part on Plaintiff's own statements as to her activities of daily living—for instance, that she led a "busy lifestyle" and walked two miles per day.[25] The ALJ's conclusion, that these activities were inconsistent with the severity of fatigue, dizziness, and syncope that Plaintiff claimed, was a reasonable one based on more than a mere scintilla of evidence. Further, Plaintiff's statements to treatment providers were not totally consistent with her testimony that her symptoms were completely disabling. In an April 2021 visit, she stated that she may have a feeling of lightheadedness once per day when she first stands up, which will last a few seconds but can typically be resolved by tensing maneuvers. Frank syncopal spells affected her only once every six months or so, a statement in stark contrast to Plaintiff's hearing testimony that she experienced frequent blackouts.

More than a mere scintilla of evidence supports the ALJ's treatment of Plaintiff's reported symptoms in formulating the RFC. The ALJ reasonably concluded that a restriction to sedentary work with postural limitations to prevent frequent position changes reflected Plaintiff's RFC, based on her symptoms and objective medical evidence. The Court will not overturn the ALJ's decision on this ground.

**B.    Prior Administrative Findings and Medical Opinions**

The ALJ has a duty to consider every medical opinion regardless of its source.[26] He may not "pick and choose among medical reports, using portions of evidence favorable to his position

---

[25] 20 C.F.R. §404.1529(c)(3)(i) (the claimant's daily activities are a factor relevant to the Commissioner's consideration of the claimant's symptoms).

[26] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

while ignoring other evidence."[27] The ALJ weighs five factors when considering the persuasiveness of a particular medical opinion, which are: (1) supportability, (2) consistency, (3) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative finding.[28] While the ALJ must weigh all five factors, he need only articulate his conclusions on supportability and consistency.[29] The persuasiveness of prior administrative medical findings are evaluated in the same manner.[30]

Plaintiff's complaint as to the ALJ's treatment of the prior administrative medical findings and medical opinions is essentially the same as above—that is, the ALJ failed to consider that her symptoms were subject to significant fluctuation. But again, the ALJ repeatedly recognized that Plaintiff's medical history showed that the severity of her symptoms would fluctuate. Dr. Sarpolis and Dr. Braverman also recognized this fluctuation in their disability determination explanations, but still found that an RFC of sedentary work was appropriate. The ALJ found that this was well supported by and consistent with the available medical evidence, including numerous normal physical examination findings as to Plaintiff's blood pressure and heartrate and a statement by one of Plaintiff's treating physicians, Dr. Italo Biaggioni, that her POTS and adrenal insufficiency were fairly well-controlled with medication. Additionally, the ALJ noted the prior administrative

---

[27] *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); see also *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability")

[28] 20 C.F.R. § 404.1520c(c)(1)-(5).

[29] *Id.* § 404.1520c(b)(2).

[30] *Id.* § 404.1520c(a).

findings were consistent with Plaintiff's reported activities of daily living. In recognition of Plaintiff's fatigue, dizziness, and history of syncope, the ALJ added postural limitations to Plaintiff's RFC.

Plaintiff claims that the prior administrative findings were inconsistent with the opinions of her other treating physicians, particularly Dr. Midyett's opinion that Plaintiff would have significant recurring symptoms that were not addressed by medication. The ALJ considered this opinion and found it wanting. Specifically, Dr. Midyett's opinion that it would be impossible for Plaintiff to work addressed an issue reserved for the Commissioner alone, and thus the ALJ properly disregarded this statement.[31] And the ALJ found the remainder of Dr. Midyett's opinion was supported only by a cursory explanation, as he failed to answer several questions concerning specific functional limitations and his opinion was inconsistent with other medical evidence, discussed at length above. Plaintiff may disagree with the ALJ's understanding of the evidence, but the Court cannot say it is unsupported by substantial evidence.

The ALJ found the opinions of Dr. Seals and Dr. Johnson not entirely persuasive. As to Dr. Seals, the ALJ questioned the supportability of his opinion because he rendered his opinion after seeing Plaintiff only twice. Further, his opinion was inconsistent with his own treatment notes, which reflected much less extreme syncope and lightheadedness than was contemplated by the extreme limitations in his opinion. Plaintiff argues that the ALJ substituted his own opinion for Dr. Seal's by finding it inconsistent with only one previous examination. But technical omissions by the ALJ do not warrant reversal when, as here, the Court can clearly follow the ALJ's

---

[31] *See* 20 C.F.R. § 404.1520b(c) (identifying such statements as "inherently neither valuable nor persuasive" and stating that the Commissioner "will not provide any analysis about how we considered such evidence in our determination or decision.").

reasoning.[32]  The ALJ had referenced numerous normal physical examination findings when discussing other medical opinions, all of which were inconsistent with Dr. Seal's extreme opined limitations.

As to Dr. Johnson, the ALJ likewise found it unsupported and inconsistent with other medical evidence.  While the ALJ noted that Dr. Johnson's opinion was somewhat better explained than other medical opinions, it appeared to rely significantly on Plaintiff's own self-reports of fatigue and syncope, which the ALJ had already found not entirely consistent with the medical evidence.

The Court will not overturn the decision of the Commissioner when, as here, it is supported by substantial evidence.  The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."[33] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[34]  Based on the evidence, the ALJ could have reasonably sided with Plaintiff.  But he did not. And because his decision is supported by substantial evidence, this Court will not disturb it.

---

[32] *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018).

[33] *Blakely v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 406 (6th Cir. 2009).

[34] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 11th day of May, 2023.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE